UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KAREN L. LIBERTA and QUINTINO D.
LIBERTA,

                              Plaintiffs,

   -v-                                            6:10-CV-1104

CITY OF ROME; ROME POLICE
DEPARTMENT; and OFFICER MICHAEL
YOXALL, individually and in his capacity
as Officer of the Rome Police Department,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                               OF COUNSEL:

HOGAN, WILLIG LAW FIRM              STEVEN M. COHEN, ESQ.
Attorneys for Plaintiffs
2410 North Forest Road, Suite 301
Getzville, NY 14068

OFFICE OF CORPORATION COUNSEL   GERARD F. FEENEY, II, ESQ.
Attorneys for Defendants                    Ass't Corporation Counsel
198 North Washington Street
Rome City Hall
Rome, NY 13440

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

       Plaintiffs Karen Liberta ("Karen" or "plaintiff") and Quintino Liberta ("Quintino") bring

this action pursuant to § 1983 against defendants City of Rome, Rome Police Department

("Rome PD"), and Officer Michael Yoxall ("Yoxall"). Plaintiffs allege the following causes of

action: (1) false arrest; (2) denial of medical treatment; (3) malicious prosecution; and (4) loss of consortium.

Defendants have moved for summary judgment on all causes of action pursuant to Federal Rule of Civil Procedure 56. Plaintiffs oppose, and defendants have replied to this opposition. Oral argument was held on February 24, 2012, in Utica, New York. Decision was reserved.

## II. **FACTUAL BACKGROUND**

The following pertinent facts are presented in the light most favorable to the plaintiffs for purposes of the motion for summary judgment. At approximately 3:30 p.m. on September 18, 2007, Karen was driving her car on Potter Road in Rome, New York, with her daughter, Diana Giglia ("Diana"), in the passenger seat. Plaintiff became unresponsive, and the car began to swerve. Her daughter reached for the steering wheel, guided the car to the side of the road, and put the car in park. Diana then exited the vehicle and, while she was walking around the rear of the car to the driver's side, plaintiff drove off. Diana's brother happened to be driving down the same road and picked Diana up. They proceeded down Potter Road and arrived at the intersection of Route 46 to discover plaintiff had rear-ended a stopped car.

The impact of the collision was minor, and both vehicles pulled off to the side of the road. The police were contacted. The first officer on scene, New York State Trooper Joseph Nitti ("Nitti"), observed that Karen could not stand unassisted and "had slurred and slow speech, droopy eyes, and limited motor skills." Feeney Affirmation, Ex. H, 1. Yoxall, a Rome PD officer, arrived on scene shortly thereafter. Nitti told Yoxall that plaintiff appeared impaired and had advised that she takes medication. Yoxall approached plaintiff, who

remained seated in her car, and observed that her speech was very slow and mumbled, and her motor coordination was poor. Plaintiff then fell out of the vehicle and slowly climbed back into the car.

Plaintiff's husband Quintino then arrived on scene and noticed that Karen was drooling and unresponsive as she sat in her car. Quintino informed Yoxall that he believed his wife was having a seizure and needed immediate medical attention. Diana and Quintino also told Yoxall that plaintiff is prescribed medication for a head injury sustained in a prior car accident and does not drink or use illegal drugs. Yoxall advised that he believed their wife and mother was under the influence of drugs and/or alcohol. Yoxall then performed several field sobriety tests, which plaintiff failed. Yoxall placed plaintiff under arrest and transported her to the Rome PD station, where she was tested for drugs and alcohol. A breath test yielded a 0.0% blood alcohol content. A urine sample tested positive for three drugs, which plaintiffs maintain were prescribed to Karen. Karen was charged with "DWI drugs" and "Following too closely." Feeney Decl., Ex. M ("Arrest Report").[1] She was released from custody at approximately 6:00 p.m. and returned home without seeking medical treatment. She met with her doctors within several days after the accident. Plaintiff has no recollection of the events from the time of the accident until she was seated in the Rome PD station.

## III. DISCUSSION

Defendants argue that they are entitled to summary judgment on all causes of action because: (1) Yoxall had probable cause to arrest Karen; (2) plaintiffs did not include a denial of medical treatment claim in the complaint or, in the alternative, defendants were not

---

[1] Karen ultimately pled guilty to "Following too closely" and "Failure to comply."

deliberately indifferent to plaintiff's medical needs; (3) no municipal policy or custom caused a violation of plaintiff's civil rights; and (4) Quintino's loss of consortium claim cannot be brought under § 1983. Plaintiffs concede that the Rome PD must be dismissed as it is essentially the same municipal entity as the City of Rome. Plaintiffs also concede to the dismissal of the malicious prosecution claim.

### A.  Summary Judgment—Legal Standard

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (citing Fed. R. Civ. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509–10 (1986). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. Id. at 250 n.4, 106 S. Ct. at 2511 n.4. The failure to meet this burden warrants denial of the motion. Id. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Id. at 250, 106 S. Ct. at 2511; Fed. R. Civ. P. 56(e).

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. Jeffreys, 426 F.3d at 553. Summary judgment is inappropriate "where a review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant]'s favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002); see also Anderson, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. False Arrest

Defendants argue that they are entitled to summary judgment on the false arrest claim because Yoxall had probable cause to arrest Karen.

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest . . . ." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Probable cause exists when an officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Dickerson v. Napolitano, 604 F.3d 732, 751 (2d Cir. 2010).

The totality of the facts clearly demonstrates the existence of probable cause for Yoxall to arrest Karen. It is undisputed that she was driving erratically, rear-ended a stopped vehicle, her speech was slowed and slurred, and she was unable to stand unassisted, fell out of her car, failed several field sobriety tests, and advised that she had taken prescription medications. These facts, viewed objectively, gave Yoxall sufficient cause to believe plaintiff had committed the crime of driving under the influence of drugs and/or alcohol. See Otero v. Town of Southampton, 194 F. Supp. 2d 167, 178–79 (E.D.N.Y. 2002) (probable cause

existed to arrest bus driver who fell while exiting the bus, slurred his speech, admitted to taking cough medicine, and failed four sobriety tests—even though subsequent blood tests were negative for alcohol and drugs), aff'd, 59 F. App'x 409 (2d Cir. 2003).

Accordingly, defendants' motion for summary judgment will be granted with respect to the false arrest claim.

### C. Denial of Medical Treatment

Defendants maintain that plaintiffs failed to include a denial of medical treatment claim in the complaint. In the alternative, defendants argue that they are entitled to summary judgment on this claim because they were not deliberately indifferent to Karen's medical needs. At oral argument, plaintiffs' counsel acknowledged that the complaint "was not well pleaded." Indeed, the complaint delineates only three causes of action and does not specifically allege that plaintiff was denied medical treatment in violation of the Fourteenth Amendment. Further, plaintiffs never sought leave to file an amended complaint.

However, woven into the first and second causes of action are factual allegations that defendants were informed Karen had a seizure and needed medical attention, but Yoxall "ignored" this condition and arrested her "[r]ather than calling an ambulance." Compl., ¶¶ 19, 20, 23, 38. Plaintiffs further allege that Karen "was deprived of access to necessary medical treatment and medication." Id. ¶ 33. Moreover, the first time this claim was clearly identified was in the defendants' motion paperwork. Defendants have thus assumed the existence of the denial of medical treatment claim and have had an adequate opportunity to defend against it. Therefore, the complaint will be liberally construed to include a denial of medical treatment claim.

The medical needs of an arrestee held in state custody are protected by the Due

Process Clause of the Fourteenth Amendment. Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009). The official custodian of an unconvicted detainee may be found liable for violating the detainee's due process rights if the official disregarded a risk of harm to the plaintiff of which the official was aware. Id. at 71. This requires a showing that the plaintiff had a "serious medical condition" that the defendant met with "deliberate indifference." Id. at 72. (internal quotation marks omitted).

Defendants concede Karen was in obvious distress, could not stand on her own, fell out of her vehicle, and had difficulty communicating. Karen's family members informed Yoxall that she was prescribed medication for a prior head injury. In his deposition, Yoxall described plaintiff's condition as "severe impairment," which he did not attribute to alcohol use. Feeney Affirmation, Ex. A, 30:22 ("Yoxall Dep."). Plaintiffs assert, and defendants dispute, that Quintino and Diana told Yoxall that their wife and mother was having a seizure and needed emergency medical assistance. Instead, Yoxall placed plaintiff under arrest, transported her to the police station, and did not release her until over two hours later. This presents an issue of material fact as to whether Yoxall was aware of plaintiff's condition but consciously disregarded the risk of harm to her. See Weyant, 101 F.3d at 857 (issue of fact precluded summary judgment where detainee was "pale, dizzy, perspiring profusely, trembling uncontrollably, hardly able to talk, and repeatedly losing consciousness" and officer had been told that detainee was a diabetic in insulin shock); Boomer v. Lanigan, No. 00 Civ. 5540, 2002 WL 31413804, at *7 (S.D.N.Y. 2002) ("Ignoring requests for medical care made by a prisoner known to be an epileptic may constitute deliberate indifference to serious medical needs . . . .").

Accordingly, defendants' motion for summary judgment will be denied with respect

to the denial of medical treatment claim.  Further, Yoxall is not entitled to qualified immunity because "a pretrial detainee's right not to be recklessly denied treatment for a serious medical condition was 'clearly established' at the time these events transpired."  Mills v. Fenger, 216 F. App'x 7, 11 (2d Cir. 2006) (summary order) (citing Liscio v. Warren, 901 F.2d 274, 276–77 (2d Cir. 1990)).

### D.  Municipal Liability

Defendants argue that the City of Rome is entitled to summary judgment because plaintiffs have failed to identify a municipal policy or custom that resulted in a violation of Karen's civil rights.  Plaintiffs allege that the Rome PD had a custom of allowing its officers to ignore a written policy requiring that urine samples be obtained at a hospital.  Plaintiffs conclude that this custom caused the denial of medical treatment because plaintiff would have received proper medical care had she been transported to the hospital for a urine screen per policy.

In order to hold a municipality liable under § 1983, a plaintiff must show the constitutional violation was caused by (1) a municipal policy, (2) a municipal custom or practice, or (3) the decision of a municipal policymaker.  Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037–38 (1978).  A municipality can be found to have a custom that causes a constitutional violation when it is "faced with a pattern of misconduct and does nothing, compelling the conclusion that [it] has acquiesced in or tacitly authorized" the misconduct.  Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007).

Plaintiffs are correct that the Rome PD's policy related to DWI arrests dictates that any urine samples "should be obtained at a hospital by trained personnel."  See Cohen Decl., Ex. C, ¶ II.T.  The Rome PD also has a policy requiring an arresting officer to seek the

assistance of a trained Drug Recognition Expert ("DRE") where, as here, "an individual's level of impairment is not consistent with the BAC." Feeney Decl., Ex. L, ¶ III.1(d).  However, there is nothing in the policy excepting a DRE from the requirement that any urine sample must be obtained at a hospital.  In fact, the only mention of a urine sample in the DRE policy is a requirement that such a sample be refrigerated and stored in a particular place within the police station.  See id. ¶ III.3(d).  It is reasonable to assume, for purposes of this motion, that all urine samples obtained by Rome PD officers—whether an arresting officer or trained DRE—must be obtained at a hospital.

In his deposition, Yoxall acknowledged that a urine sample was obtained from Karen at the Rome PD station by a DRE.[2]  This was in violation of the Rome PD's written policy requiring urine samples to be obtained at the hospital.  Further, Yoxall stated he was unaware of this policy, which supports plaintiffs' claim that the Rome PD regularly ignored it and tacitly authorized its officers to ignore it.  See Yoxall Dep. 52:2–4.

Therefore, there is sufficient evidence in the record for a rational trier of fact to conclude that a municipal custom led to the denial of medical treatment.  Accordingly, defendants' motion for summary judgment will be denied with respect to the City of Rome's municipal liability.

### E. Loss of Consortium

The loss of consortium claim will be dismissed as this is a state tort claim brought on behalf of Quintino.  Because the parties are not diverse, the only possible source of jurisdiction over this claim is pendent jurisdiction stemming from Karen's remaining § 1983

---

[2] Although the arrest report indicates that "[t]he defendant was taken to Rome ER and a blood sample secured," it appears undisputed that Karen was not taken to the hospital.  See Arrest Report. Defendants offer no explanation for this discrepancy.

claim for denial of medical treatment. However, "a party may not claim supplemental, or pendent, jurisdiction based upon claims of another party." Pritzker v. City of Hudson, 26 F. Supp. 2d 433, 445 (N.D.N.Y. 1998) (McAvoy, C.J.); see also Fleming v. Sharma, 605 F. Supp. 2d 399, 409 (N.D.N.Y. 2009) ("[P]laintiff may not assert supplemental jurisdiction for her loss of consortium claim because her first cause of action is brought on behalf of another party."). There is thus a lack of jurisdiction over this claim.

## IV. CONCLUSION

Plaintiffs concede that the Rome PD and the malicious prosecution claim must be dismissed. The false arrest claim must also be dismissed as Yoxall had probable cause to arrest Karen for driving under the influence of drugs and/or alcohol. Similarly, Quintino's loss of consortium claim will be dismissed because such a derivative claim cannot be brought pursuant to § 1983. However, an issue of material fact exists as to whether Yoxall was deliberately indifferent to plaintiff's medical needs and whether a municipal custom caused the denial of medical treatment.

Therefore, it is

ORDERED that

1. Defendants' motion for summary judgment (Dkt. No. 12) is GRANTED in part and DENIED in part;

2. The defendant Rome Police Department is DISMISSED and shall be removed from the caption;

3. The false arrest, malicious prosecution, and loss of consortium causes of action are DISMISSED and plaintiff Quintino D. Liberta shall be removed from the caption; and

4. Plaintiff Karen L. Liberta's § 1983 claim for denial of medical treatment against

defendants Officer Michael Yoxall and the City of Rome is NOT DISMISSED.

IT IS SO ORDERED.

_____
United States District Judge

Dated: February 29, 2012
       Utica, New York.